1  Warren Lipschitz*
   wlipschitz@mckoolsmith.com
2  MCKOOL SMITH, P.C.
   300 Crescent Court, Suite 1500
3  Dallas, Texas 75201
   Telephone: (214) 978-4000
4  Facsimile: (214) 978-4044

5  Eliza Beeney*
   ebeeney@mckoolsmith.com
6  MCKOOL SMITH, P.C.
   One Manhattan West
7  395 9th Avenue, 50th Floor
   New York, NY 10001
8  Telephone: (212) 402-9400
   Facsimile: (212) 402-9444
9
   James R. Patterson, SBN 211102
10 jim@pattersonlawgroup.com
   Jennifer M. French, SBN 265422
11 jenn@pattersonlawgroup.com
   PATTERSON LAW GROUP, APC
12 1350 Columbia Street, Unit 603
   San Diego, California 92101
13 Telephone: (619) 756-6990
   Facsimile: (619) 756-6991
14
15 *pro hac vice application forthcoming

   Attorneys for Applicant
16 Nokia Technologies Oy

17            UNITED STATES DISTRICT COURT

18            SOUTHERN DISTRICT OF CALIFORNIA

19

20 *In Re Ex Parte* Application of Nokia       CASE NO.:       **22MC1423**
   Technologies Oy,
21                                             **APPLICATION OF NOKIA**
            Applicant,                         **TECHNOLOGIES OY FOR AN**
22                                             **ORDER PURSUANT TO 28 U.S.C.**
                                               **§ 1782 GRANTING LEAVE TO**
23 For an Order Pursuant to 28 U.S.C.          **OBTAIN DISCOVERY FROM**
   § 1782 Granting Leave to Obtain             **QUALCOMM INCORPORATED**
   Discovery from Qualcomm Incorporated        **FOR USE IN FOREIGN**
24 for use in Foreign Proceedings.             **PROCEEDINGS**

25

26

27

28

---
NOKIA'S APPLICATION FOR AN ORDER
GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

1

2

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND .............................................................................. 2

III.    LEGAL STANDARD ......................................................................................... 3

IV.     ARGUMENT ...................................................................................................... 5

      A.      Nokia Has Met the Statutory Requirements of Section 1782 ................. 5

      B.      The Discretionary *Intel* Factors Strongly Favor Granting Nokia's
      Application .............................................................................................. 7

            1.      Qualcomm Is Not a Participant in the Chinese Action ............... 7

            2.      The Chinese Court Will Be Receptive To the Discovery
            Obtained Through This Application ............................................. 8

            3.      Nokia Is Not Circumventing Any Foreign Proof-Gathering
            Restrictions ................................................................................. 9

            4.      Nokia's Discovery Requests Are Narrowly Tailored to
            Avoid Undue Burden ................................................................ 11

V.      CONCLUSION ................................................................................................ 12

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

*Illumina Cambridge Ltd. v. Complete Genomics, Inc.*,

5
  2020 WL820327 (N.D. Cal. Feb. 19, 2020) ....................................................... 6, 8

6

*In re Application for Discovery for Use in Foreign Proceeding*,

7
  2019 U.S. Dist. LEXIS 5632 (D.N.J. Jan. 10, 2019) ........................................... 9

8

*In re Ex Parte Apple Inc.*,

9
  2015 WL 5838606 (S.D. Cal. Oct. 7, 2015) ................................................... 4, 6, 7

10

*In re Ex Parte Application Varian Med. Sys. Int'l AG*,
  2016 WL 1161568 (N.D. Cal. Mar. 24, 2016) ...................................................... 4

11

*In re Ex Parte Motorola Mobility, LLC*,

12
  2012 WL 4936609 (N.D. Cal. Oct. 17, 2012) .................................................... 10

13

*In re Google Inc.*,

14
  2014 WL 7146994 (N.D. Cal. Dec. 15, 2014) .................................................... 10

15

*In re Hoteles City Express*,

16
  2018 WL 3417551 (N.D. Cal. July 13, 2018) ................................................... 4, 5

17

*In re Judicial Assistance Pursuant to 28 U.S.C. 1782*,

18
  2015 WL 3439103 (D. Nev. May 28, 2015) ...................................................... 10

19

*In re Koninklijke Philips N.V.*,

20
  2018 WL 620414 (S.D. Cal. Jan. 30, 2018) ........................................................ 5

21

*In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*,

22
  539 F.2d 1216 (9th Cir. 1976) ............................................................................. 4

23

*In re Levi Strauss & Co.*,
  2018 WL 3872790 (N.D. Cal. Aug. 15, 2018) ..................................................... 5

24

*In re MoneyOnMobile, Inc.*,

25
  2019 WL 2515612 (N.D. Cal. June 18, 2019) ..................................................... 8

26

*In re O'Keeffe*,

27
  646 F. App'x 263 (3d Cir. 2016) ......................................................................... 9

28

*In re Pioneer Corp.*,
     2018 WL 2146412 (C.D. Cal. May 9, 2018)......................................................11

*In re Qualcomm Inc.*,
     2018 WL 3845882 (N.D. Cal. Aug. 13, 2018)......................................................7

*In re Republic of Ecuador*,
     2010 WL 3702427 (N.D. Cal. Sept. 15, 2010)......................................................5

*In re Request for Subpoena by Ryanair Ltd.*,
     2014 WL 5088204 (N.D. Cal. Oct. 9, 2014)......................................................9

*In re Roebers*,
     2012 WL 2862122 (N.D. Cal. July 11, 2012)......................................................4

*In re Yasuda*,
     2019 WL 4933581 (N.D. Cal. Oct. 7, 2019)......................................................5

*Intel Corp. v. Advanced Micro Dynamics*,
     542 U.S. 241 (2004)......................................................passim

*IPCom GMBH & Co. KG v. Apple Inc.*,
     61 F. Supp. 3d 919 (N.D. Cal. 2014)......................................................5

*Khrapunov v. Prosyankin*,
     931 F.3d 922 (9th Cir. 2019)......................................................4, 5, 6

*Lufthansa Technik AG v. Panasonic Avionics Corp.*,
     2017 WL 6311356 (W.D. Wash. Dec. 11, 2017)......................................................10

*Medeiros v. Int'l Game Tech.*,
     2016 WL 1611591 (D. Nev. Apr. 22, 2016)......................................................9

*MetaLab Design Ltd. v. Zozi Int'l, Inc.*,
     2018 WL 368766 (N.D. Cal. Jan. 11, 2018)......................................................7

**STATUTES**

28 U.S.C. § 1782......................................................passim

**OTHER AUTHORITIES**

International Litigation, 35 S. Tex. L. Rev. 215 (1994)......................................................8

1    Nokia Technologies Oy ("Nokia") respectfully submits this *Ex Parte*
2  Application for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain
3  Discovery from Qualcomm Incorporated ("Qualcomm") for use in a foreign
4  proceeding currently underway in the People's Republic of China (the "Chinese
5  Action"). Nokia's Application is supported by this Memorandum and the
6  concurrently filed Declarations of Warren Lipschitz and Yuguo Zuo.

7  **I.    INTRODUCTION**

8    Nokia seeks leave to obtain precisely the proportionate and highly relevant
9  discovery contemplated by 17 U.S.C. § 1782. This discovery is for use in a patent
10 infringement suit against Vivo Mobile Communications Co. Ltd. ("Vivo") and its
11 local distributors, Beijing Lude Shunxiang Technology Ltd. ("BLST") and Beijing
12 Huayuan Xidan Shopping Centre Ltd. ("BHXSC"). *See* Zuo Decl. ¶ 5. In the Chinese
13 Action, Nokia alleges that certain mobile phones manufactured by Vivo and
14 distributed by BLST and BHXSC (the "Accused Products") infringe Nokia's patents.
15 *Id.* Nokia's allegations are based, in part, on the function of Qualcomm chips in the
16 Accused Products.

17    Through this Application, Nokia seeks limited discovery from Qualcomm
18 relating to how its chips operate, which is directly relevant to Nokia's infringement
19 allegations in the Chinese Action. Qualcomm is not subject to the jurisdiction of the
20 foreign court, and so Nokia must file this Application to obtain the necessary
21 discovery from Qualcomm. Chinese courts are receptive to similar evidence obtained
22 through section 1782 applications and may rely on it to render a decision on the merits
23 of, for example, a patent infringement claim. *See id.* ¶¶ 11. Nokia's proposed requests
24 are narrow and would not impose an undue burden on Qualcomm. *See* Lipschitz
25 Decl., Ex. 2 (Proposed Subpoena). To the extent that Qualcomm has concerns about
26 confidentiality, Nokia (1) expressly does not seek Qualcomm's confidential source
27 code or chip-level schematics, even though such code and schematics would be
28 relevant and responsive to its requests, and (2) is willing to submit a joint

confidentiality request with Qualcomm to the Chinese court requesting that the court enter a strict confidentiality order before Nokia submits any Qualcomm material to the Chinese court as evidence. Nokia is also willing to enter into a protective order in this proceeding.

As described in further detail below, Nokia's Application satisfies the three statutory factors of section 1782, and each of the four discretionary factors outlined by the Supreme Court in *Intel Corp. v. Advanced Micro Dynamics*, 542 U.S. 241 (2004), weighs heavily in favor of granting the requested discovery. Accordingly, Nokia respectfully requests that the Court grant its Application.

## II.   **FACTUAL BACKGROUND**

Nokia is a leading innovator in wireless communications technology with one of the strongest wireless communications patent portfolios in the world. As relevant to this case, Nokia's inventions include WO 2006/085177 (the "'177 Patent") and its Chinese counterpart ZL200680009521.7, which relate to the use of a variable bandwidth envelope modulator to process transmission signals in a radio transmitter. Lipschitz Decl. ¶ 3 & Ex. 1 ('177 Patent) at Abstract. The '177 Patent addresses the inefficiencies that result from the use of a low-pass filter during the transmission of a signal in a radio transmitter. *See, e.g.*, Lipschitz Decl., Ex. 1 ('177 Patent) at 3:25-28. Specifically, the bandwidth of the low-pass filter is defined by the modulation that has the widest bandwidth, which results in suboptimal filtering for signals with narrower bandwidth. *Id.* To address this problem, the '177 Patent discloses the use of a variable low-pass filter and a pulse width modulator to optimize signal transmission. *Id.* at 4:4-20, claim 1, 4.

On March 9, 2022, Nokia filed a patent infringement complaint in the Beijing Intellectual Property Court. Nokia's complaint asserts infringement of the Chinese counterpart to the '177 Patent. *See* Zuo Decl. ¶¶ 5-7 & Ex. A (Chinese Complaint). Specifically, Nokia asserts that the Accused Products utilize chips manufactured by Qualcomm in a manner that infringes. At least four Qualcomm chips are relevant to

infringement: QET5100, QET6110, SDR735, and SDR868. For example, the QET5100 and QET6110 chips are "envelope trackers" that function as, among other things, the pulse width modulator. *See* Lipschitz Decl., Ex. 1 at Request 1-2. As another example, the SDR735 and SDR868 chips relate to the generation of output signals for the QET5100 and QET6110 chips. These functionalities are directly related to the inventions disclosed in the '177 Patent, and thus will reveal how the Accused Products infringe Nokia's patent.

On June 20, 2022, the Beijing Intellectual Property Court dismissed a jurisdiction challenge made by Vivo, and on July 8, 2022, Vivo appealed this decision. Nokia expects that the higher court will affirm the Beijing Intellectual Property Court's dismissal in approximately October 2022. Nokia would thereafter be expected to submit evidence to support its case, including the evidence obtained through this Application.

## III.     **LEGAL STANDARD**

Section 1782 is "the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel*, 542 U.S. at 247. Since 1855, when Congress first provided federal-court aid to foreign tribunals, it has "substantially broadened the scope of assistance federal courts could provide for foreign proceedings" by codifying and amending section 1782. *Id.* at 247-48. The statute provides, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made pursuant to a letter rogatory issued or, request made, by a foreign or international tribunal or upon the application of any interested person. . . . To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a). This statutory language "has been distilled to permit district courts to authorize discovery where three general requirements are satisfied: (1) the person from whom the discovery is sought 'resides or is found' in the district . . . ; (2)

the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the application is made by a foreign or international tribunal or 'any interested person.'" *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019) (quoting 28 U.S.C. § 1782(a)).

"Once [these three] statutory requirements are met, a district court is free to grant discovery in its discretion." *In re Ex Parte Apple Inc.*, 2015 WL 5838606, at *3 (S.D. Cal. Oct. 7, 2015) (alteration and citation omitted); *see also In re Ex Parte Application Varian Med. Sys. Int'l AG*, 2016 WL 1161568, at *2 (N.D. Cal. Mar. 24, 2016) (same). District courts exercise this discretion in view of the "twin aims" of section 1782, (1) "providing efficient assistance to participants in international litigation" and (2) "encouraging foreign countries by example to provide similar assistance to our courts." *Intel*, 542 U.S. at 252.

To guide the district court's application of these "twin aims," the Supreme Court has set forth four non-exclusive factors: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance," (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and (4) whether the request is "unduly intrusive or burdensome." *Id.* at 264-65.

An *ex parte* application is an appropriate vehicle for seeking discovery pursuant to section 1782. *See, e.g.*, *In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976) (granting section 1782 request *ex parte* is an "appropriate action"); *In re Hoteles City Express*, 2018 WL 3417551, at *2 (N.D. Cal. July 13, 2018) ("The instant *ex parte* application is an acceptable method of requested discovery under Section 1782."); *In re Ex Parte Application Varian Med. Sys. Int'l AG*, 2016 WL 1161568, at *2 ("1782 petitions are regularly reviewed on an *ex parte* basis."); *In re Roebers*, 2012 WL 2862122, at *2 (N.D. Cal. July 11, 2012) ("An *ex*

*parte* application is an acceptable method for seeking discovery pursuant to § 1782."). "Such *ex parte* applications are typically justified by the fact that the parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it." *In re Republic of Ecuador*, 2010 WL 3702427, at *2 (N.D. Cal. Sept. 15, 2010) (citation omitted); *see also IPCom GMBH & Co. KG v. Apple Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014) (same). Nevertheless, Nokia is concurrently providing notice of this Application to Qualcomm's outside counsel. *See* Lipschitz Decl. ¶ 3.

## IV.   ARGUMENT

### A.   Nokia Has Met the Statutory Requirements of Section 1782

Nokia has met the three statutory requirements of section 1782, and the Court is therefore authorized to grant this Application. Qualcomm "resides or is found" in this District, the discovery sought is for use in a foreign proceeding, and Nokia is an "interested person" in the Chinese Action. *See Khrapunov*, 931 F.3d at 925 (stating the three factors).

First, Qualcomm "resides or is found" in this District. *See id.* (stating first factor). Although section 1782 does not define the district in which a corporation "resides or is found," courts have uniformly held that the first statutory factor is met when the application is filed in the district in which the target of discovery maintains is principal place of business. *See, e.g.*, *In re Koninklijke Philips N.V.*, 2018 WL 620414, at *1 (S.D. Cal. Jan. 30, 2018) ("Applicant satisfies the statutory requirements imposed by Section 1782. Respondent maintains its principal place of business in San Diego, California, which is located within the Southern District of California."); *In re Yasuda*, 2019 WL 4933581, at *3 (N.D. Cal. Oct. 7, 2019) (finding that entity "resides or is found" in the Northern District, where it maintained its principal place of business); *In re Hoteles City Express*, 2018 WL 3417551, at *2 (same); *In re Levi Strauss & Co.*, 2018 WL 3872790, at *3 (N.D. Cal. Aug. 15, 2018) (same). Because Qualcomm's principal place of business is at 5775 Morehouse Drive

in San Diego, California, it "resides or is found" in the Southern District of California, and Nokia's Application meets the first statutory requirement. *See* Lipschitz Decl., Ex. 3 (Excerpt of Qualcomm 2021 10K) at pp. Cover Page, 29, 38; *see also In re Ex Parte Apple Inc.*, 2015 WL 5838606, at *2 (finding that "Qualcomm is found in th[is] district," since its principal place of business is in San Diego, California (internal quotation marks omitted)).

Second, the discovery sought by Nokia is "for use in a proceeding in a foreign or international tribunal." *See Khrapunov*, 931 F.3d at 925 (stating second factor). A section 1782 request satisfies this factor when the applicant seeks discovery for use at some stage of an ongoing or "reasonab[ly] contemplate[ed]" foreign proceeding before a "conventional court" or "administrative [or] quasi-judicial" body. *Intel*, 542 U.S. at 249, 259. Here, Nokia plans to use the discovery sought in this Application in an ongoing litigations before a "conventional" foreign court, the Beijing Intellectual Property Court. *See* Zuo Decl. ¶¶ 5, 11-12. Nokia plans to use this discovery to show how the Accused Products operate and infringe the '177 Patent. It is well-settled that such use satisfies the second statutory requirement of section 1782. *See, e.g.*, *In re Application Pursuant to 28 U.S.C. 1782 of Japan Display Inc.*, 2021 WL 4391882, at *2 (C.D. Cal. Apr. 5, 2021) (proceedings "pending in the Beijing Intellectual Property Court" satisfied "for use" requirement); *In re in re TPK Touch Sols. (Xiamen), Inc.*, 2016 U.S. Dist. LEXIS 159681, at *5 (N.D. Cal. Nov. 17, 2016) (concluding that "the statutory requirements have been satisfied" including because "actions before the People's Courts in China constitute foreign tribunals for purposes of Section 1782").

Third, because Nokia is the plaintiff in the Chinese Action, it is an "interested person" and satisfies the third statutory requirement of section 1782. *See Khrapunov*, 931 F.3d at 925 (stating third factor); *see also Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common examples of, the 'interested person[s]' who may invoke § 1782."); *Illumina Cambridge Ltd. v.*

1    *Complete Genomics, Inc.*, 2020 WL820327, at \*4 (N.D. Cal. Feb. 19, 2020) ("[A]
2    litigant in [a] foreign proceeding is an 'interested person' for purposes of § 1782.").

3       Nokia therefore satisfies each of the three statutory factors, and this Court "is
4    free to grant discovery in its discretion." *In re Ex Parte Apple Inc.*, 2015 WL 5838606,
5    at \*3 (citation omitted).

**B.**    **The Discretionary *Intel* Factors Strongly Favor Granting Nokia's Application**

      This Court should exercise its discretion and grant Nokia's Application because
each of the discretionary factors identified by the Supreme Court in *Intel* weighs in
Nokia's favor. *See Intel*, 542 U.S. at 264-65. First, Qualcomm is not a party to the
Chinese Action, and Nokia has no way of obtaining the requested discovery absent
section 1782 aid. Second, there is no evidence in this case that the Chinese courts
would be unreceptive to discovery obtained through this Application; in fact, Chinese
courts accept this type of evidence and take it into account. Third, Nokia is not
circumventing any foreign proof gathering restrictions, and fourth, the discovery
request is narrowly tailored to obtain only the most relevant documents.

**1.**    **Qualcomm Is Not a Participant in the Chinese Action**

      Because Qualcomm is not a participant in the Chinese Action, the first
discretionary factor identified by the Supreme Court in *Intel*, whether "the person
from whom discovery is sought is a participant in the foreign proceeding," *Intel*, 542
U.S. at 264, weighs in favor of granting Nokia's Application.

      Some courts have found that the "key issue" in applying the first *Intel* factor is
"whether the material is obtainable through the foreign proceeding," and here, it is
not. *MetaLab Design Ltd. v. Zozi Int'l, Inc.*, 2018 WL 368766, at \*3 (N.D. Cal. Jan.
11, 2018) (citation omitted); *see also In re Qualcomm Inc.*, 2018 WL 3845882, at \*2
(N.D. Cal. Aug. 13, 2018) (same). China is a civil law system, which lacks procedures
analogues to the pretrial discovery regime operative in the United States. *See Intel*,
542 U.S. at 261 n.12; *see also* Zuo Decl. ¶ 10. Nokia therefore has no way to request

the discovery sought here from Qualcomm or the defendants in the Chinese Action. *See id.* Courts routinely allow discovery pursuant to section 1782 under these circumstances. *See, e.g.*, *Illumina Cambridge*, 2020 WL 820327, at *4 (finding first factor "weighs in favor of § 1782 discovery" where discovery targets were not parties to the foreign action and there was "no right to pretrial discovery comparable to that in the United States" in the foreign courts); *see also, e.g.*, *In re Application Pursuant to 28 U.S.C. 1782 of Japan Display Inc.*, 2021 WL 4391882, at *3.[1]

### 2. The Chinese Court Will Be Receptive To the Discovery Obtained Through This Application

The second *Intel* factor, "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance," also favors Nokia. *See Intel*, 542 U.S. at 264 (reciting second factor). Courts routinely find that this factor weighs in favor of allowing discovery where, as here, there is no evidence that the foreign court would be *unreceptive* to discovery obtained in the United States. *See, e.g.*, *28 U.S.C. 1782 of Japan Display Inc.*, 2021 WL 4391882, at *4 ("[T]here is no indication that the Beijing Intellectual Property court would not be receptive to [1782] evidence," and thus "the second discretionary factor also weighs in favor of granting

---

[1] The drafters of section 1782 were aware that many civil law systems do not provide for U.S.-style discovery, and that "recourse to 1782 might enable a foreign court or litigant to obtain evidence in the United States, production of which could not be compelled under foreign law." Hans Smit, Recent Developments in International Litigation, 35 S. Tex. L. Rev. 215, 235 (1994) (drafter of section 1782 explaining, among other things, statutory intent). Nevertheless, the drafters "regarded this as desirable" for several reasons, including because "foreign procedural systems would generally quite readily accept and welcome the assistance American courts might grant in providing them with relevant information." *Id.* The Supreme Court acknowledged as much in *Intel*, by stating: "[a] foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions; such reasons do not necessarily signal objection to aid from United States federal courts." *Intel*, 542 U.S. at 261.

discovery"); *In re MoneyOnMobile, Inc.*, 2019 WL 2515612, at *3 (N.D. Cal. June 18, 2019) (where party represented that it "has no information that the [court] would *not* receive discovery," this factor favored "authorizing service of the subpoena"); *Medeiros v. Int'l Game Tech.*, 2016 WL 1611591, at *3 (D. Nev. Apr. 22, 2016) (finding that "[t]here is no indication that the Brazilian courts would be unreceptive to . . . discovery" and granting section 1782 application); *In re Request for Subpoena by Ryanair Ltd.*, 2014 WL 5088204, at *2 (N.D. Cal. Oct. 9, 2014) (second factor weighed in favor of discovery where party argued that "there is no authority suggesting the Irish government would be hostile to or otherwise reject" the discovery).

Moreover, in this case, there is affirmative evidence that the Chinese court *would* be receptive to evidence obtained through this Application. *See* Zuo Decl. ¶ 11. There is no law or rule in China prohibiting a litigant from seeking recourse to section 1782 or declaring that evidence obtained through section 1782 may not be used in judicial proceedings. *See id.* Nor is there any other practice suggesting that China or its courts disfavor section 1782 discovery. *See id.* To the contrary, China is a party to the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters, which suggests an effort to cooperate and facilitate proof gathering across country lines. *See In re Application for Discovery for Use in Foreign Proceeding*, 2019 U.S. Dist. LEXIS 5632, at *24-25 (D.N.J. Jan. 10, 2019) ("[T]he receptivity of a foreign court to U.S. federal judicial assistance may be inferred from its assent to treaties that promote such cooperation."); *see also In re O'Keeffe*, 646 F. App'x 263, 267-68 (3d Cir. 2016) (same).

### 3.   Nokia Is Not Circumventing Any Foreign Proof-Gathering Restrictions

Because the Application does not "conceal[] an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," the third *Intel* factor also weighs in Nokia's favor. *Intel*, 542 U.S. at 265. As

explained above, there is no law, rule, or policy of China or its courts prohibiting the presentation of evidence gathered through a section 1782 application. *See* Zuo Decl. ¶ 11. Courts have found that this factor weighs *against* granting discovery most commonly when the applicant requests discovery in a foreign proceeding, the request is denied, and the applicant then seeks the same or similar discovery in the United States. *See, e.g.*, *Lufthansa Technik AG v. Panasonic Avionics Corp.*, 2017 WL 6311356, at *4 (W.D. Wash. Dec. 11, 2017) ("[I]f the petitioner has already sought and been denied the discovery in the foreign court . . . , an effort to obtain section 1782 discovery would run afoul of this factor."); *In re Judicial Assistance Pursuant to 28 U.S.C. 1782*, 2015 WL 3439103, at *8-9 (D. Nev. May 28, 2015) (third *Intel* factor weighed against applicant where it previously sought discovery in Dutch proceeding, which was denied).

Here, Nokia has not sought, and the Chinese court has not denied, the discovery requested through this Application. There is no evidence that Nokia makes this Application in bad faith or in an attempt to circumvent any ruling or policy of the Chinese or United States courts. Accordingly, this factor weighs in favor of granting Nokia's Application. *See In re Application Pursuant to 28 U.S.C. 1782 of Japan Display Inc.*, 2021 WL 4391882, at *4 (third factor weighed in applicant's favour where it was "not aware of any Chinese policies that would prohibit discovery of the evidence it seeks"); *In re Google Inc.*, 2014 WL 7146994, at *3 (N.D. Cal. Dec. 15, 2014) ("[T]he third discretionary factor weighs in [applicant's] favor, as there is nothing to suggest that [it] is attempting to circumvent foreign proof-gathering restrictions."); *In re Ex Parte Motorola Mobility, LLC*, 2012 WL 4936609, at *2 (N.D. Cal. Oct. 17, 2012) ("Because there is no indication in the record of an attempt to subvert a foreign tribunal's restrictions, the court finds that this factor weighs in favor of [the applicant].").

/ / /

/ / /

---

NOKIA'S APPLICATION FOR AN ORDER
GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

1

2

### 4.    Nokia's Discovery Requests Are Narrowly Tailored to Avoid Undue Burden

3

4

5

6

7

8

9

10

11

The fourth *Intel* factor, which instructs that "unduly intrusive or burdensome requests may be rejected or trimmed," also weighs in favor of granting the Application. *See Intel*, 542 U.S. at 265. District courts apply this factor in view of the "ordinary tools of discovery management, including Federal Rule of Civil Procedure 26." *Illumina Cambridge*, 2020 WL 820327, at *7; *see also In re Pioneer Corp.*, 2018 WL 2146412, at *8 (C.D. Cal. May 9, 2018) (same). Under Rule 26(b)(1), a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Nokia's requests are highly relevant, narrowly tailored, and do not impose any undue burden on Qualcomm. Discovery requests to chipmakers like Qualcomm typically request information regarding dozens or even hundreds of chips. Here, Nokia requests documents relating to four specifically identified Qualcomm chips in a single manufacturer's mobile phones. The requests are limited to a five year time period and are targeted at particular documents which will show the relevant features and functionality of the identified Qualcomm chips, which will in turn reveal how the Accused Products operate and infringe the '177 Patent. *Compare In re Pioneer Corp.*, 2018 WL 2146412, at *8-9 (C.D. Cal. May 9, 2018) (finding requests overbroad where time period encompassed nearly 17 years and "the vast majority of requests [sought] information about a topic . . . that was not at issue in the German proceedings"), *with In re Ex Parte Application Varian Med. Sys. Int'l AG*, 2016 WL 1161568, at *5-6 (finding requests sought relevant information and were narrowly tailored where they sought "design specifications and requirement specifications of . . . software versions" and agreeing that such information was "highly relevant" to patent infringement case where features of software were at issue). The requests are also unlikely to impose a significant intrusion or burden on Qualcomm, as Nokia does

not seek source code or chip-level schematics and the documents responsive to the requests are not likely to be voluminous. In addition, Qualcomm has already collected and produced many of the same documents Nokia seeks in this Application pursuant to other 1782 applications filed by Nokia for use in other foreign litigations.

To the extent Qualcomm objects to this Application on the basis that it seeks discovery is for use in China, it has no support for that position. There is no wholesale bar on discovery for use in China; in fact, courts routinely grant discovery for use in a variety of foreign jurisdictions, China included. *See, e.g.*, *In re Application Pursuant to 28 U.S.C. 1782 of Japan Display Inc.*, 2021 WL 4391882 (granting discovery for use in the Beijing Intellectual Property Court); *In re Shueisha, Inc.*, 2021 WL 5279816 (N.D. Cal. Nov. 12, 2021) (granting application seeking discovery from Google for use in copyright case China); *In re Ex Parte Application of TPK Touch Sols. (Xiamen) Inc.*, 2016 WL 6804600 (N.D. Cal. Nov. 17, 2016) (granting discovery for use in a China People's Court for patent infringement case); *Ex parte Application of Am. Petroleum Inst.*, 2011 WL 10621207 (N.D. Cal. Apr. 7, 2011) (granting application seeking discovery from Google for use in intellectual property cases in China). If Qualcomm contends that the information sought by Nokia is confidential and/or proprietary, Nokia is prepared to submit a joint confidentiality request with Qualcomm to the Chinese court requesting that the court enter a strict confidentiality order before Nokia submits any Qualcomm material to the Chinese court as evidence. Nokia is also willing to enter into a protective order in this proceeding.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Nokia respectfully requests that the Court grant its Application and issue an Order pursuant to 28 U.S.C. § 1782(a) authorizing Nokia to take discovery from Qualcomm.

1   DATED:  October 3, 2022              Respectfully submitted,

2

3

4                                        By:    /s/ Jennifer M. French

5                                        Warren Lipschitz*
                                         wlipschitz@mckoolsmith.com
6                                        MCKOOL SMITH, P.C.
                                         300 Crescent Court, Suite 1500
7                                        Dallas, Texas 75201
                                         Telephone: (214) 978-4000
8                                        Facsimile: (214) 978-4044

9                                        Eliza Beeney*
                                         ebeeney@mckoolsmith.com
10                                       MCKOOL SMITH, P.C.
                                         One Manhattan West
11                                       395 9th Avenue, 50th Floor
                                         New York, NY 10001-8603
12                                       Telephone: (212) 402-9400
                                         Facsimile: (212) 402-9444
13
                                         James R. Patterson, SBN 211102
14                                       jim@pattersonlawgroup.com
                                         Jennifer M. French, SBN 265422
15                                       jenn@pattersonlawgroup.com
                                         PATTERSON LAW GROUP, APC
16                                       1350 Columbia Street, Unit 603
                                         San Diego, California 92101
17                                       Telephone: (619) 756-6990
                                         Facsimile: (619) 756-6991
18
                                         *pro hac vice application forthcoming
19
                                         Attorneys for Applicant
20                                       Nokia Technologies Oy

21

22

23

24

25

26

27

28

---

NOKIA'S APPLICATION FOR AN ORDER
GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS
13